DAVEY PEGGING–MACH. CO. v. ISAAC PROUTY & CO. et al.

(Circuit Court, D. Massachusetts. August 4, 1899.)

No. 971.

PATENTS—VALIDITY AND INFRINGEMENT.

The Davey patent, No. 555,434, for an improvement in pegging-machines, consisting in a device which goes inside a shoe to support the insole while the awl and peg are successively driven through the leather, is void for want of invention, as to claims 1, 2, 3, and 10, the patentee having used only ordinary mechanical skill for the purpose of reducing both the vertical dimensions and the diameter of the work-supporting anvil or button; and, even if these claims be conceded to show invention, they must, in view of the prior state of the art, be limited strictly to the exact construction shown and described. *Held*, therefore, that the patent was not infringed by defendants.

This was a suit in equity by the Davey Pegging-Machine Company against Isaac Prouty & Co. (incorporated) and others for alleged infringement of a patent for an improvement in pegging-machines.

Fish, Richardson & Storrow, for complainant.

Louis W. Southgate, for defendants.

BROWN, District Judge. This suit is for infringement of letters patent No. 555,434, granted February 25, 1896, to John F. Davey, for an improvement in pegging-machines. The invention relates to a device which goes inside a shoe to support the insole while the awl and peg are successively driven through the leather. The specification states that it is the purpose of the invention to overcome certain difficulties, and—

"To provide a horn-tip and work support therein by means of which shoes can be pegged rapidly and satisfactorily after the last is drawn. To this end the horn-tip of the machine embodying this invention is provided with an annular support, and a work-supporting anvil or button mounted to rotate therein, and provided with gearing by which it is retained in the same position with relation to the awl and driver of the machine, whatever may be the position of the horn, which has to be rotated in presenting different parts of the edge of the shoe to the awl and driver in the usual manner."

Claim 1 of the patent in suit is as follows:

"(1) A work-support for pegging-machines, comprising a horn-tip provided with a supporting-annulus, combined with a button having a shank contained

within said annulus, and a supporting portion resting on said annulus, said button being provided with external gear-teeth in a portion of its surface in bearing engagement with said annulus, substantially as and for the purpose described."

The first question is as to the validity of this claim,—especially in view of the patent to Sturtevant & Bickford, dated February 15, 1876 (No. 173,428), for a pegging-machine. The following drawings illustrate the respective devices of Sturtevant & Bickford, 1876, and of Davey, 1896.

The defendants' device is illustrated in the drawings of the patent No. 580,379, to P. R. Condon, dated April 13, 1897.

I am of the opinion that claim 1 involves no patentable invention. The complainant says of the device of Sturtevant & Bickford that its vertical dimensions are such that it never could be brought within the toe of the shoe, and I think it clearly appears that claim 1 relates exclusively to mechanical changes for the reduction of the ver-

96 F.—22

tical dimensions. In Sturtevant & Bickford, the gears for holding the button against the rotation of the horn are affixed to a portion of the shank of the button that extends below the annulus. Davey locates his gear-teeth at a higher point, and is thus able to dispense with any extension of the shank below the annulus. No new function or mode of operation results. The complainant's brief says:

"The sole function of the location of the teeth in the Davey patent is to minimize the vertical dimensions of the button, and prevent the necessity of a downward extension of the shank below the supporting annulus."

Height was reduced by a change of location of the gears. In making this change, Davey was working upon an ordinary problem, common in the mechanic arts, and made only an ordinary mechanical change. If it were necessary to find in the art of shoemaking instances of the adoption of similar mechanical means for the purposes of that art, we might refer to the following prior patents, namely: No. 233,561, to J. R. Scott, October 19, 1880; No. 304,689, to E. F. Arnold, September 9, 1884; No. 398,305, to E. B. Allen, February 19, 1889; No. 444,126, to W. Carey, January 6, 1891; No. 492,906, to R. Ley, March 7, 1893; and No. 536,183, to W. Carey, March 26, 1895.

Furthermore, the claim, if valid for the exact construction displayed, must be strictly limited thereto; and, so construed, it is not infringed by the defendants.

The purpose of Sturtevant & Bickford was both to drive the pegs and to cut off their ends; and their device is further criticised on the ground that the amount of awl-feed which would be permitted in any button of practical size is wholly inadequate for practical purposes in a machine, because the blade provided to cut the pegs would permit, at most, an awl-feed movement of about three-sixteenths of an inch in a button of an inch in diameter, whereas there are often only three pegs to an inch, and therefore a feed of one-third of an inch is required. In the Sturtevant & Bickford device the awl-passage is at the center, and the lateral movement is confined within the radial length of the button. This length is partly occupied by the blade. Inspection of the drawings will show that the patentee of the patent in suit employs an eccentric awl-passage, and obtains the desired length of feed-traverse by passing, not from the center outward, but from an eccentric point on one side of the button to an eccentric point on the other side of the button. He is thereby enabled to reduce in size the button. This feature of an eccentric awl-passage is made an element in claims 2, 3, and 10, which are as follows:

"(2) The combination of the rotatable horn of a pegging-machine, with a work-supporting button pivotally supported in the tip thereof, and provided with an eccentric awl-passage, and means for preventing rotation of the button when the horn is turned, substantially as and for the purpose described. (3) The combination of the rotatable horn of a pegging-machine, with a work-supporting button pivotally supported in the tip thereof, and provided with an eccentric awl-passage, and a slot extending laterally therefrom through and to the other side of the axis of the button, and means for preventing rotation of the button when the horn is turned, substantially as and for the purpose described." "(10) The combination of the horn adapted to rotate upon a verti-

cal axis provided at its tip with a supporting-annulus concentric with its axis of rotation, with a button supported by said annulus and provided with an eccentric awl-passage within the opening of the annulus, and means for preventing rotation of the button when the horn is turned, substantially as and for the purpose described."

The essential feature of each of these claims is the employment of a central feed-traverse to reduce the size of the button. The specification and briefs point out no purpose in employing the eccentric awl-passage, other than the reduction of the diameter of the button. This reduction enables the patentee to make his button 20 per cent. smaller. The above drawings illustrate this. I am of the opinion that the problem of reducing the diameter of the button, like that of reducing its vertical dimensions, was an ordinary mechanical problem, solved by ordinary mechanical skill, involving no invention. Sturtevant & Bickford had clearly pointed out the mechanical operation of the work-support, and left Davey merely the task of making smaller what they had devised.

Should we concede, however, the validity of claims 2, 3, and 10, I am of the opinion that the defendants do not infringe those claims. Davey reduces the size of his button by a central traverse. He adopts an eccentric awl-passage because he proposes to feed across the center, and thus save room. He says in his specification:

"By having the slot extend across at both sides of the axis, as shown, the button may be of much smaller diameter than would be the case if the awl entered directly over the axis of the button, which latter would then have to have a radial slot of sufficient length to accommodate the feed movement of the awl."

Though the defendants employ an eccentric awl-passage, they do not employ it for a central feed-traverse, nor for the purpose of obtaining that reduction of the size of the button which, so far as has been made to appear, was Davey's sole reason for employing an eccentric awl-passage. The complainant thus describes in its brief the operation of the defendants' device:

"The awl moves laterally from the eccentric awl-passage where it descends to the center of the button. The awl then is lifted and retracted, and the peg is driven at this point. The next feed movement of the awl carries the peg held in the work against a stationary knife which is screwed to the top of the button, with its edge a little beyond the center of the button, and thereby, as the work is carried along, the peg is gradually severed."

The traverse of the defendants' awl is therefore entirely within the radial length of the button, as was the case in the device of Sturtevant & Bickford. Mr. Metcalf, the defendants' expert, correctly says:

"The relation of defendants' machine to the machine of the patent in suit is that defendants, instead of using the central feed-traverse, which gives to the machine of the patent in suit whatever advantage there may be in the reduction of the necessary size of the button, have foregone that advantage, in order that, by using a one-sided feed-traverse, they might gain the greater advantage of being able to cut off the peg points without the use of an additional machine."

The defendants' button has all the disadvantages of size resulting from the employment of the one-sided or radial feed-traverse of

Sturtevant & Bickford, pointed out by the complainant as a reason for considering that device inoperative.

There is, in my opinion, no infringement in the use of an eccentric awl-passage in a button of a size unreduced from that of Sturtevant & Bickford. To make a positive reduction in the size of an old button is one thing; to use the same-sized button used by Sturtevant & Bickford, and to make room on the face thereof for other parts, is another and distinct thing. The substantial difference in function fully meets the charge that the defendants, in using an eccentric awl-passage, appropriated anything invented or foreseen by Davey. The combination of the defendants should not be considered merely as a pegging device. The defendants successfully accomplish pegging and cutting pegs in one operation. Were it not that they desire to cut the pegs, which Davey's device could not do, they might dispense with the eccentric awl-passage, and peg with the Sturtevant & Bickford button, reduced only in its vertical dimensions. It is fair to say, therefore, that the eccentric awl-passage is employed by the defendants for cutting purposes, and not for pegging purposes. The contention of the complainant that the defendants' button would be larger in size, did they not employ an eccentric awl-passage, and that, therefore, the defendants have employed the eccentric awl-passage for the same purpose for which the complainant employs it, seems to me entirely untenable. It is not true that the defendants' button, considered merely as a pegging button, would be any larger without an eccentric awl-passage. It is only the defendants' new combination of a pegger and cutter that would be larger, and, as the complainant has not invented or claimed such combination, his patent, if valid, could not be suffered to defeat a meritorious and different invention. Furthermore, if claims 2, 3, and 10 could be fairly read to cover broadly a horn-tip and geared button having an eccentric awl-passage, irrespective of the purpose to be effected by the combination, the claims would be void, in view of the patent to Carey (No. 536,183), dated March 26, 1895. The bill will be dismissed.